Slip Op. 10-133

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
--------------------------------------------------------x
                                                        :
NSK CORPORATION, et al.,                                :
                                                        :
           Plaintiffs,                                  :
                                                        :
           and                                          :
                                                        :
FAG ITALIA S.p.A., et al.,                              :
                                                        :
           Plaintiff-Intervenors,                       :
                                                        :            Before:  Judith M. Barzilay, Judge
           v.                                           :            Consol. Court No. 06-00334
                                                        :
UNITED STATES,                                          :
                                                        :
           Defendant,                                   :
                                                        :
           and                                          :
                                                        :
THE TIMKEN COMPANY,                                     :
                                                        :
           Defendant-Intervenor.                        :
                                                        :
--------------------------------------------------------x
```

## OPINION & ORDER

[The court sustains in part and remands in part the third remand determination of the U.S. International Trade Commission.]

Dated:  December 9, 2010

*Crowell & Moring LLP* (*Matthew P. Jaffe*, *Robert A. Lipstein*, and *Carrie F. Fletcher*), for Plaintiffs NSK Corporation, NSK Ltd., and NSK Europe Ltd.

*Sidley Austin LLP* (*Neil R. Ellis* and *Jill Caiazzo*), for Plaintiffs JTEKT Corporation and Koyo Corporation of U.S.A.

*Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP* (*Max F. Schutzman* and *Andrew T. Schutz*), for Plaintiff-Intervenors FAG Italia S.p.A., Schaeffler Group USA, Inc., Schaeffler KG, The Barden Corporation (U.K.) Ltd., and The Barden Corporation.

*Steptoe & Johnson* (*Herbert C. Shelley* and *Alice A. Kipel*), for Plaintiff-Intervenors SKF Aeroengine Bearings UK and SKF USA, Inc.

*United States International Trade Commission*, *James M. Lyons* (General Counsel), *Neal J. Reynolds* (Assistant General Counsel for Litigation), and *David A.J. Goldfine*, Office of the General Counsel, for Defendant United States.

*Stewart and Stewart* (*Terence P. Stewart*, *Eric P. Salonen*, *Philip A. Butler*, and *Jumana Madanat Misleh*), for Defendant-Intervenor The Timken Company.


Barzilay, Judge:  The U.S. International Trade Commission's ("the Commission") sunset review of antidumping duty orders covering ball bearings from France, Germany, Italy, Japan, and the United Kingdom comes before the court for the fifth time.[1]  *See NSK Corp. v. United States*, 34 CIT ___, 712 F. Supp. 2d 1356 (2010) ("*NSK IV*") (affirming in part and remanding in part second remand determination); *NSK Corp. v. United States*, 33 CIT ___, 637 F. Supp. 2d 1311 (2009) ("*NSK III*") (remanding first remand determination for agency's failure to provide substantial evidence and failure to comply with court's remand instructions); *NSK Corp. v. United States*, 32 CIT ___, 593 F. Supp. 2d 1355 (2008) ("*NSK II*") (denying motion for rehearing); *NSK Corp. v. United States*, 32 CIT ___, 577 F. Supp. 2d 1322 (2008) ("*NSK I*") (affirming in part and remanding in part second sunset review).  In its third remand determination now at issue, the agency addresses three questions:  (1) whether some incentive likely would

---

[1] The court presumes familiarity with the procedural history of the case.

draw a discernible amount of United Kingdom ball bearings specifically to the United States in the absence of the antidumping duty order, thereby supporting the Commission's decision to cumulate the United Kingdom imports with other subject ball bearings;[2] (2) whether the cumulated subject imports likely will have a significant adverse impact on the vulnerable domestic industry in the absence of the antidumping duty orders; and (3) whether the cumulated subject imports likely would constitute more than a minimal or tangential cause of material injury to the domestic industry that likely will continue or recur in the absence of the orders, given the significant presence of, and seemingly impenetrable barrier imposed by, non-subject imports in the United States market. *See generally Views of the Commission on Remand*, Inv. Nos. 731-TA-394-A, 731-TA-399-A (Aug. 25, 2010) ("*Third Remand Determination*"). With its most recent conclusions, the Commission has declined to provide a genuine discussion on complex issues of law and has, thus, foreclosed the opportunity for meaningful judicial review of the latest agency action. *See generally Third Remand Determination*. The Commission again fails to support its determination with substantial evidence and unfortunately continues to mischaracterize the court's remand instructions. As explained below, the court remands the case to the Commission for further action consistent with this and all previous opinions in this matter.

---

[2] In *NSK IV*, the court did "not believe that the existing record, taken as a whole, c[ould] support an affirmative discernible adverse impact finding" on ball bearings from the United Kingdom and invited the Commission to "reopen the record and obtain additional data on this issue in the next remand proceeding, if it so chooses." *NSK IV*, 34 CIT at ___, 712 F. Supp. 2d at 1367; *accord id.* at ___, 712 F. Supp. 2d at 1368 ("[T]he Commission may reopen the record and obtain additional data on the issue.").

## I. Standard of Review

The Court will not sustain an agency determination "unsupported by substantial evidence on the record." 19 U.S.C. § 1516a(b)(1)(B)(i). An agency supports its findings with substantial evidence when the record exhibits "more than a mere scintilla" of relevant and reasonable evidence to buttress its conclusion. *See Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). To provide the requisite support, the agency must present more than mere conjecture. *See NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319-20 (Fed. Cir. 2009) (citation omitted). Though the court does not require perfect explanations from the agency, the path taken by the administrative body "must be reasonably discernible." *Id.* at 1319 (citation omitted). At a minimum, the agency must explain the standards that it applied and rationally connect them to the conclusions it made from the record. *See Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

## II. Discussion

### A. Ball Bearings from the United Kingdom

Despite the court's invitation in *NSK IV* to reopen the record, 34 CIT at ___, 712 F. Supp. 2d at 1367-68, the Commission declined to do so in its redetermination of whether ball bearings from the United Kingdom likely would have a discernible adverse impact on the domestic industry in the absence of the antidumping duty order. Status Report and J. Scheduling Order at 2, *NSK Corp. v. United States*, No. 06-00334 (CIT filed May 12, 2010).[3] Nevertheless, the

---

[3] Notwithstanding the court's explicit conclusion to the contrary, the agency later stated that it would not reopen the record because the existing record supported its finding that the United Kingdom imports likely would leave the requisite impact on the industry. *Third Remand*

Commission has now chosen not to cumulate the United Kingdom ball bearings with those from the other four subject countries.[4] *Third Remand Determination* at 12.  The agency also reasoned that subject imports from the United Kingdom alone likely would not have significant volume or price effects on the domestic industry upon revocation of the order.  *Id.* at 13.  The Commission in turn found that ball bearings from the United Kingdom likely would not lead to the continuation or recurrence of material injury absent the order.  *Id.*

Plaintiffs NSK Corporation, NSK Ltd., and NSK Europe Ltd. (together, "NSK") and Defendant-Intervenor The Timken Company ("Timken") urge the court to affirm the Commission's decisions on United Kingdom ball bearings, though for separate reasons.[5]  NSK Comments 2-5; Timken Comments 5-6.  NSK argues that the agency could not offer substantial evidence for an affirmative finding on either the discernible adverse impact or likely material injury analysis and, therefore, the Commission reached the correct result.  NSK Comments 2-4.  NSK also notes that it does not believe that the court compelled the Commission to make a particular finding.  NSK Comments 4-5.  While it does not explicitly state that it agrees with the agency's view of the court's instructions in *NSK IV*, Timken explains that it "understands" the

---

*Determination* at 2 n.8, 11-12.  The court interprets this as a finding that reopening the record would cause no significant change to the relevant body of evidence.

[4] The agency notes that it "would not have made these findings in the absence of the Court's conclusion in *NSK IV* that the record taken as a whole cannot establish that the subject imports from the United Kingdom would likely have a discernible adverse impact upon revocation." *Third Remand Determination* at 12.

[5] Plaintiffs JTEKT Corporation and Koyo Corporation of U.S.A. (collectively, "JTEKT") take no position on the cumulation issue and instead focus their comments exclusively on the likely impact of subject imports on the domestic industry and the role of non-subject imports in the United States market.  JTEKT Comments 4-6 & n.2.

Commission's conclusion that it had to reverse its position. Timken Comments 6. Timken also shares the Commission's belief that the current record could support an affirmative finding on the discernible adverse impact of United Kingdom ball bearings. Timken Comments 6.

The court sustains the Commission's determination. Ordinarily, the Commission retains the sole discretion as to whether it will reopen the record and make certain factual findings. *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1382 (Fed. Cir. 2003). That the court may have limited the Commission's options on remand is of no moment; "[e]ven though a reviewing court's decision that substantial evidence does not support a particular finding may have the practical effect of dictating a particular outcome, that is not the same as the court's making its own factual finding." *Nucor Corp. v. United States*, 371 F. App'x 83, 90 (Fed. Cir. 2010) (unpublished). As the record presently constituted does not support a decision to cumulate United Kingdom imports and the Commission has declined to reopen the record, the court upholds the agency's negative conclusions on ball bearings from the United Kingdom.

**B.  The Cumulated Subject Imports**

In the context of a sunset review, the Commission assesses whether revocation of the antidumping duty order under review likely would lead to continuation or recurrence of material injury.[6] 19 U.S.C. § 1675a(a)(1). As part of that analysis, the agency examines the likely

---

[6] At the heart of this provision lies a causation inquiry, whereby the Commission must determine whether the cumulated subject imports likely would constitute more than a minimal or tangential cause of material injury to the domestic industry that likely will continue or recur in the absence of the orders. *NSK IV*, 34 CIT at ___, 712 F. Supp. 2d at 1367-68; *see NSK II*, 32 CIT at ___, 593 F. Supp. 2d at 1363-67; *Usinor v. United States*, 26 CIT 767, 794-95 (2002) (not reported in F. Supp.); *Neenah Foundry Co. v. United States*, 25 CIT 702, 710-11, 155 F. Supp. 2d 766, 773-74 (2001).

volume, price effect, and impact of subject imports on the domestic industry. *Id.* The Commission addressed these factors on remand, using only data on the cumulated imports from France, Germany, Italy, and Japan in its analysis. *Third Remand Determination* at 12 n.56, 13-39. The court reviews the elements below.

**1. The Conditions of Competition in the United States Market and the Likely Volume and Price Effects of Cumulated Subject Imports**

In the *Third Remand Determination*, the agency reassessed the conditions of competition within the domestic industry and the likely volume and price effects of cumulated subject imports. *Id.* at 13-23. The Commission modeled its discussion of these factors after its earlier presentation of the same elements in *NSK I*, basing its conclusions on nearly-identical grounds. *Compare id.* at 13-23, *with NSK I*, 32 CIT at ___, 577 F. Supp. 2d at 1338-47. When the court first heard this case, it affirmed the agency's determinations on these issues as supported by substantial evidence, despite reservations about some evidence offered by the Commission. *NSK I*, 32 CIT at ___, 577 F. Supp. 2d at 1338-47. NSK raises anew concerns on likely volume and price effects of the subject imports, NSK Comments 10-16, while Timken supports the Commission's current analyses as sufficiently analogous to its previous determinations. Timken Comments 7-13. Although NSK has identified gaps in the agency record that normally would merit further discussion, the court already has concluded that these problems do not undercut the substantial evidence in support of the Commission's conclusions. *NSK I*, 32 CIT at ___, 577 F. Supp. 2d at 1338-47. Moreover, NSK has not shown how the subtraction of United Kingdom imports from the equations alters the agency's previous determinations. For these reasons, the court sustains the Commission's results on these points.

### 2.  Non-Subject Imports, the Likely Significant Adverse Impact of the Cumulated Subject Imports on the Vulnerable Domestic Industry, and the Causation Inquiry

A brief discussion of the structure of the United States ball bearing market will highlight the importance of non-subject imports in this case.  Two crucial facts characterize the domestic market:  (1) the high degree of substitutability between domestic ball bearings, subject imports, and non-subject imports and (2) the important role of price in purchase decisions.  *Third Remand Determination* at 33, 36; *Views of the Commission on Remand*, Inv. Nos. 731-TA-394-A, 731-TA-399-A, at 43 (Jan. 5, 2010) ("*Second Remand Determination*").  Because price plays such a crucial role in the market, it follows that a drop in price for one group    i.e., domestic ball bearings, subject imports, or non-subject imports    likely will affect the prices at which another group sells the subject merchandise.  Therefore, to understand the consequences of price changes in the domestic ball bearing industry, the Commission must focus on the market as a whole and examine the effects of each group on the others.

In *NSK IV*, the court summarized its concerns expressed in earlier opinions over the role of non-subject imports in the United States market.  The court noted that "[n]on-subject imports have 'become a significant and price-competitive factor' in the United States ball bearing market, amply increased their market share in terms of value at the expense of domestic and subject ball bearings, and have undersold the domestic like product and subject imports in at least two-thirds of the possible price comparisons."  *NSK IV*, 34 CIT at ___, 712 F. Supp. 2d at 1368 (citing *Second Remand Determination* at 69-70).  The court explained that "the facts of this case necessitate that the Commission confirm that subject imports likely will reach the requisite level of causation despite the significant presence of, and seemingly impenetrable barrier imposed by,

non-subject imports in the United States market." *Id*. at ___, 712 F. Supp. 2d at 1367-68. The court asked the Commission to answer two questions on remand in light of the data on non-subject imports: in the absence of the antidumping duty orders, "whether the cumulated subject imports likely will have a significant adverse impact on the vulnerable domestic industry" and "whether the cumulated subject imports constitute more than a minimal or tangential cause of injury to the domestic industry which will likely continue or recur." *Id.* at ___, 712 F. Supp. 2d at 1367.

In the *Third Remand Determination*, the Commission again has failed to account adequately for the role of non-subject imports when analyzing likely impact and causation. With respect to likely impact, the agency offered two sentences in support of its affirmative determination:

> Upon reviewing the Court's instructions on this issue as well as the pertinent record evidence, we find that revocation of the orders will likely have a significant adverse impact on the vulnerable domestic ball bearing industry. Given our findings on the subject imports' likely significant volume, likely significant underselling and likely significant price effects, the substitutability between domestic and subject bearings, and the domestic industry's vulnerability, it necessarily follows that revocation of the orders would likely have a significant adverse impact on the domestic industry.

*Third Remand Determination* at 31. The conspicuous absence of any discussion on the effects of non-subject imports underscores the Commission's refusal to accurately examine the three-part structure of the domestic market. While the Commission might have reached the correct conclusions on likely volume, underselling, and price effects of unrestrained subject imports, *id.*, it ignored the influence of non-subject imports in the market, as NSK and JTEKT also discuss in their comments. NSK Comments 5-16; JTEKT Comments 12-27. On this record, it appears to

the court that if subject producers lower the prices of their imports, then the non-subject producers almost certainly will also drop their prices. As a result, the non-subject imports likely would negate any potential significant adverse effect of lower-priced subject imports, thereby preventing the latter from achieving the requisite level of impact. Without more, the court cannot determine whether the cumulated subject imports likely will have a significant adverse impact on the vulnerable domestic industry in the absence of the antidumping duty orders.

On the issue of causation, the Commission correctly framed the question that lies at the heart of the court's remand instructions:

> whether any impediment imposed by the significant presence of low-priced non-subject imports in the U.S. market will likely inhibit the subject imports from capturing additional market share from the domestic industry such that the subject imports are thereby precluded from having a likely significant adverse impact on the condition of the domestic industry if the orders were revoked.

*Third Remand Determination* at 32. However, despite this cogent articulation, the agency did not offer any meaningful discussion on non-subject imports in its causation analysis or directly address the question posed by the court in its remand instructions. *See id.* at 32-39. Instead, the Commission based its affirmative causation determination on seven grounds: (1) the continued presence of subject imports in the domestic market; (2) the excess capacity of subject producers; (3) the likely return of more aggressive volume and underselling strategies of the subject producers that occurred prior to the imposition of the order; (4) the fungibility between the domestic like product and subject merchandise; (5) the importance of price in purchase decisions; (6) the inelastic demand of ball bearings; and (7) the likely significant volumes of subject imports in the absence of the order. *Id.* at 32-34. The rationale offered by the Commission fails for many reasons. That subject imports maintain a continued presence in the

domestic market does not mean that subject merchandise would achieve the requisite level of causation in the absence of the order. Contrary to the agency's conclusion, unexplained inferences from a continuation of market share, measured either in terms of quantity or value, will not necessarily prove that subject imports likely would cause material injury to the domestic industry. The same holds true for the agency's arguments on excess capacity, fungibility, the importance of price, and inelastic demand, none of which alone can prove cause. The third justification does not consider that changed market conditions, i.e., a large increase in non-subject imports' market share, likely would render past volume and underselling strategies unworkable. Finally, the evidence on likely volumes of subject imports does not pass muster because, as previously explained, it unreasonably narrows its analysis to only certain segments of the domestic market. With each of these justifications, the agency centers its reasoning on the relationship between subject imports and the domestic industry. For the reasons previously explained, "the non-subject imports may prevent the subject imports from achieving the requisite level of causation and, therefore, serve as an impenetrable barrier that precludes the agency from affirmatively finding injury in this sunset review." *NSK IV*, 34 CIT at ___, 712 F. Supp. 2d at 1368. Without a more thorough examination of non-subject imports, the court cannot determine whether the cumulated subject imports constitute more than a minimal or tangential cause of injury to the domestic industry which will likely continue or recur.

In light of the foregoing, the court finds that the record evidence cannot support affirmative significant adverse impact or causation determinations. Consequently, the court concludes that the record cannot support an affirmative finding of material injury. The Commission may reopen the record and obtain additional data on the issue at its discretion.

### III. Conclusion

In the *Third Remand Determination*, the Commission has presented a host of reasons to support its conclusions. The court sustains the agency's decisions dealing with United Kingdom ball bearings. However, amid the myriad of justifications produced by the agency, the court cannot discern the necessary connection between the facts found and the agency's conclusions on likely impact and causation. As the court stated in *NSK II*, the consideration of interchangeable non-subject imports is an important aspect of the causation analysis. 32 CIT at ___, 593 F. Supp. 2d at 1363-67, 1369 (citing *Mittal Steel Point Lisas Ltd. v. United States*, 542 F.3d 867 (Fed Cir. 2008); *Bratsk Aluminum Smelter v. United States*, 444 F.3d 1369 (Fed. Cir. 2006); *Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997)). These decisions all stand clearly for the proposition that the agency, in a case of this type, must rationally account for non-subject imports before it may issue an affirmative injury determination. For the foregoing reasons, it is

**ORDERED** that the court **SUSTAINS IN PART** and **REMANDS IN PART** the Commission's *Third Remand Determination*. More specifically, it is

**ORDERED** that the court **SUSTAINS** the Commission's decision not to cumulate ball bearings from the United Kingdom with other subject merchandise; it is further

**ORDERED** that the court **SUSTAINS** the agency's determination that revocation of the antidumping duty order on subject imports from the United Kingdom likely would not lead to continuation or recurrence of material injury to the domestic industry within a reasonably foreseeable time; it is further

ORDERED that the court **SUSTAINS** the Commission's conclusions on the conditions of competition within the domestic industry and the likely volume and price effects of cumulated subject imports; it is further

ORDERED that the court **REMANDS** the likely significant adverse impact analysis to the Commission. The agency must determine whether the cumulated subject imports likely will have a significant adverse impact on the vulnerable domestic industry in the absence of the antidumping duty orders. In so doing, the Commission must account for the tripartite nature of the United States ball bearing market and decide whether the interplay and competition between subject imports, non-subject imports, and domestic ball bearings would prevent subject imports from achieving the requisite level of impact. Because the court finds that the existing record, taken as a whole, cannot support an affirmative finding on likely significant adverse impact, the Commission may reopen the record and obtain additional data on the issue; it is further

ORDERED that the court **REMANDS** the causation inquiry to the Commission. The agency must determine whether the cumulated subject imports constitute more than a minimal or tangential cause of injury to the domestic industry that likely will continue or recur in the absence of the antidumping duty orders, given the significant presence of, and seemingly impenetrable barrier imposed by, non-subject imports in the United States market. Once again, the Commission must account for the three-part composition of the domestic ball bearing market and decide whether the interplay and competition between subject imports, non-subject imports, and domestic ball bearings would prevent subject imports from achieving the requisite level of cause. Because the court concludes that the existing record, taken as a whole, cannot support an

affirmative finding on causation, the Commission may reopen the record and obtain additional

data on the issue; it is further

ORDERED that, in completing its analysis of the likely significant adverse impact and

causation inquiries on remand, the Commission must address the court's concerns over non-

subject imports as noted in *NSK IV*, *NSK III*, *NSK II*, and *NSK I*; and it is further

ORDERED that the Commission shall provide a status report to the court by December

20, 2010, that explains whether the agency will re-open the record on the likely significant

adverse impact and causation issues. The parties also shall file a joint scheduling order

consistent with Court and Chambers rules at that time.


Dated:   December 9, 2010                                          /s/ Judith M. Barzilay
         New York, New York                                       Judith M. Barzilay, Judge